Austin B. Egan (13203)
**STAVROS LAW P.C.**
8915 South 700 East, Ste. 202
Sandy, Utah 84070
Tel: 801.758.7604
Fax: 801.893.3573
austin@stavroslaw.com
*Attorney for Cassie Spencer*

# IN THE UNITED STATES DISTRICT COURT
## THE DISTRICT OF UTAH, CENTRAL DIVISION, SOUTHERN REGION

| | |
|---|---|
| CASSIE SPENCER,<br><br>Plaintiff,<br><br>vs.<br><br>KANE COUNTY, a political subdivision of the State of Utah,<br><br>Defendant. | **COMPLAINT**<br><br>**Jury Demand**<br><br>Case No. 2:21-cv-00512-TS<br><br>Judge Ted Stewart |

Plaintiff Cassie Spencer, by and through the undersigned counsel, brings this Complaint against Defendant Kane County.

## PRELIMINARY STATEMENT

Plaintiff brings this action against Defendant for violations of Title VII of the Civil Rights Act, 42 USC § 2000e *et seq.* ("Title VII").

## PARTIES, JURISDICTION, & VENUE

1. Plaintiff Cassie Spencer ("Spencer") is currently a resident of Wasatch County, State of Utah, but during her employment with Kane County, she resided in Kane County.

2. Defendant Kane County (the "County") is a political subdivision of the State of

1

Utah. The County's administrative offices are located in Kanab, Utah.

3. Spencer has exhausted administrative remedies, having timely filed a charge of discrimination with the Utah Antidiscrimination and Labor Division (UALD) and Equal Employment Opportunity Commission (EEOC) on or about December 30, 2019, and an amended charge on or about March 19, 2020. Ms. Spencer received a notice of right to sue from the U.S. Department of Justice's Civil Division on or about June 2, 2021.

4. At all times relevant to this Complaint, the County was an "employer" within the meaning of Title VII, 42 U.S.C. § 2000e(b).

5. At all times relevant to this Complaint, Spencer was an "employee" within the meaning of Title VII, 42 U.S.C. § 2000e(f).

6. This Court has jurisdiction over Spencer's claims asserted herein pursuant to 42 U.S.C. § 2000e-5(f) and 28 U.S.C. § 1331.

7. The employment practices alleged to be unlawful were committed in the County, which is within the jurisdiction of the U.S. District Court for the District of Utah, Central Division, Southern Region.

8. Spencer's claims asserted herein arose in the District of Utah, Central Division, Southern Region, and therefore, venue is proper pursuant to 28 U.S.C. § 1391(b) and 28 U.S.C. § 125.

## GENERAL ALLEGATIONS

9. On or about December 22, 2016, the County hired Spencer to work as a correctional officer for the County Sheriff's Office. Spencer is female.

10. As a correctional officer, Spencer's job duties and responsibilities included supervising inmates at the County Jail in Kanab (the "Jail"). This involved new prisoner intake processing, prisoner searches, cell assignments, cell searches, investigations, and drug testing.

11. On multiple occasions during her employment with the County, Spencer was subjected to unwelcome, hostile, demeaning, and harassing conduct on the basis of her sex.

12. On or about November 26, 2017, while Spencer was speaking with an inmate regarding an investigation, a fellow officer (Deputy Banks) interrupted her investigation. Banks told the inmate to return to his "section," and directed Spencer to go speak with him in an administrative office, where Banks baselessly claimed he was trying to prevent the inmate from "flirting" with Spencer. This occurred in the presence of other corrections officers and Banks engaged in this conduct in a deliberate attempt to humiliate Spencer and undermine her authority at the Jail.

13. Spencer reported the incident to Lieutenant Keller, who dismissed her concerns and stated that Banks was just "social awkward."

14. Despite knowing of Spencer's complaint about Banks, the County assigned Spencer to work "graveyard" shifts Banks for three months.

15. On or about February 18, 2018, Deputy Banks left a "gift book" in Spencer's work box. Other officers (Deputies Gray and Stovall) knew of this unsolicited gift and condescendingly asked Spencer about the book with intent to make her feel uncomfortable. Deputy Stovall, in attempt to demean Spencer, in a joking tone, told Spencer: "Remember, if he touches you or anything you need to tell one of us."

16. In March 2018, while working at the Jail and during a break, Spencer was looking at dresses on the website Amazon.com to wear to her sister-in-law's upcoming wedding. Deputy Banks leaned over closely to Spencer and said "Hmmm, red huh? That would look nice on you, but remember you don't want to look better than the bride."

17. In the weeks that followed, Banks frequently made comments about Spencer's physical appearance. Banks closely followed Spencer around the jail. He often deliberately pushed his entire body up against the key watcher door, knowing that Spencer would have to get close to him in order to exit through that door.

18. In April 2018, Spencer again reported Banks' harassing conduct to Lt. Keller. She made it clear that Banks' conduct made her very uncomfortable. Lt. Keller again dismissed her concerns, and again referred to Banks as "socially awkward." Keller also stated, while chuckling, "Oh, that's just Banks." Keller said Banks was "harmless" and told Spencer she had "nothing to worry about."

19. On or about July 3, 2018, Spencer responded to a radio call to provide a wheelchair to an inmate that Cpl. Doss was bringing back into the Jail. After she delivered the wheelchair and returned to the office, Banks asked her, "Did you get Doss off?" This was an overt sexual reference made with intent to humiliate Spencer.

20. Spencer reported the July 3 incident to Pod Control staff member Cindy Ohweiler, and made it clear that Lt. Keller dismissed her prior two complaints. Spencer then reported the incident to Cpl. Doss, who merely stated, "Huh, that's weird."

21. During the time period of July-August 2018, during a morning shift at the jail, while Spencer was bent over in a chair, Banks approached her from behind and touched and rubbed her back, and stated, "Oh, it's going to be okay."

22. Two days later, referencing the incident where Banks touched Spencer, Deputy Stovall asked: "You know what he was probably thinking right?" Spencer answered in the negative. Stovall then stated: "I'm six inches from her butt! I'm six inches from her butt!" Stovall then laughed hysterically. This sexist "joke" was made with intent to humiliate Spencer on the basis of sex, and this "joke" was repeated on several occasions to multiple deputies.

23. In this same time frame (July-August 2018), Spencer was discussing her concerns that a "Peeing Tom" was watching her while she was at home. Deputy Stovall took this opportunity to further humiliate Spencer on the basis of sex, and stated: "Just be glad it wasn't Banks. Don't be surprised if you see a purple van outside your house with white tissues on your lawn. You know, because Banks drives a purple van." Again, Stovall laughed at his own commentary with intent to humiliate and demean Spencer.

24. Deputy Stovall "joked" that Banks was digging a hole in his back yard and was planning to put Spencer in the hole, similar to what happened in the movie "Red Dragon."

25. Over the next several months, in the presence of other deputies, and in additional attempts to humiliate Spencer on the basis of her sex, Stovall asked Spencer to tell her "Peeping Tom" story to other deputies.

26. On or about December 8, 2018, Stovall showed Spencer a video of Banks getting up out of his chair and (while remaining fully clothed) thrusting his crotch area into the counter. Stovall and Deputy Cram told Spencer that Banks was talking about Spencer in her "range

5

pants" and her "ass." Deputy Cram told Spencer, "You may want to be careful what you wear around Banks."

27. Approximately one week later, Deputy Cram (while laughing) told Spencer that Banks was talking about her ass again, and that Banks was pulling up videos on YouTube of girls with tight pants on, and stated, "See, this is what I had to deal with." Spencer reported this incident to Control Operator Sterling.

28. Spencer again made it clear she did not want to hear any more sexual references or any of Banks' comments. In response, Deputy Cram said, "Fine, we'll just stop telling you when Banks talks about your ass."

29. Spencer reported the incident to Pod Control operator Sterling, who recommended that Spencer report the incident to Lt. Keller or Sgt. Roundy.

30. On or about February 17, 2021, after a coworker called in sick, Spencer told Cpl. Barney that she was afraid of Banks, but Barney nevertheless required her to work the same schedule as Banks.

31. On or about February 21, 2019, Spencer reported to Cpl. Doss the comments that Banks and other deputies had made about her "ass," and reported the "jokes" that Deputies were telling about her. She also said she had reported Banks' conduct twice to Lt. Keller.

32. On or about February 25, 2019, Spencer met with Lt. Keller and again reported the harassment she had been subjected to. In response, Lt. Keller said he "forgot" about Spencer's prior complaints and he asked her if she was being "over sensitive."

33. On or about February 27, 2019, Spencer met with Rhonda Gant in the County's human resources (HR) department to discuss the video that Deputy Stovall showed her.

6

34. On or about March 1, 2021, Spencer was interviewed by County "Department Investigator," Dan Watson. Mr. Watson asked Spencer multiple questions about her allegations of harassment. However, Watson had no intent of investigating Spencer's complaints with objectivity. About a month prior to this interview, Watson had baselessly and falsely accused Spencer of smoking marijuana and sleeping with married men.

35. On or about March 6, 2019, when Spencer arrived at work, she heard Deputy Anderson state, "Oh great, so now we all have to walk on eggshells."

36. On or about March 7, 2021, Watson again interviewed Spencer. During this interview, Watson attempted to make Spencer feel like the harassing conduct she experienced was her own fault.

37. On or about March 21, 2019, the County sent Spencer a letter notifying her that she was being sent for a mental health evaluation and that she would be placed on paid administrative leave effective on March 25, 2019.

38. On or about July 30, 2019, the County terminated Spencer's employment.

**FIRST CLAIM FOR RELIEF**
**(Sex-Based Harassment in Violation of Title VII)**

39. Spencer refers to the preceding paragraphs and incorporates those allegations herein by reference.

40. Title VII prohibits workplace harassment against employees on the basis of sex.

41. The workplace harassment Spencer experienced was unwelcome, frequent, severe, pervasive, and created a hostile work environment.

42. The workplace harassment altered Spencer's work environment and made it more difficult for her to perform her work duties and complete her assigned tasks.

43. The workplace harassment also caused Spencer to suffer severe emotional distress, depression, and anxiety.

44. After Spencer reported the harassment to the County, the County was under a duty to take prompt corrective action to prevent further acts of harassment. The County breached that duty when it failed to take any corrective action, and the County was negligent in permitting the harassment to occur and continue.

45. The County's breach of its duty to timely correct and prevent harassment constitutes negligence and makes the County liable to Spencer for her damages alleged herein.

46. The County maintained, fostered, participated in, and/or ratified a hostile work environment where sex-based harassment was so severe and pervasive that it altered the terms and conditions of Spencer's employment.

47. The workplace harassment Spencer was subjected to—along with the County's failure to promptly correct and/or prevent the harassment—resulted in a tangible adverse employment action (the termination of Spencer's employment), and the County is strictly liable for the unlawful conduct.

## SECOND CLAIM FOR RELIEF
(Sex-Based Discrimination in Violation of Title VII)

48. Spencer refers to the preceding paragraphs and incorporates those allegations herein by reference.

49. The County terminated Spencer's employment because she is female, in violation of Title VII.

50. The County's unlawful termination of Spencer's employment has caused her to suffer past and future economic losses, including lost wages, harm to her career, reputation, and

earning potential, and severe emotional distress. Spencer seeks recovery of these damages in an amount to be quantified and proven during the discovery process.

## THIRD CLAIM FOR RELIEF
### (Retaliation in Violation of Title VII)

51. Spencer refers to the preceding paragraphs and incorporates those allegations herein by reference.

52. Title VII prohibits retaliation against an employee for engaging in protected opposition to workplace harassment and discrimination.

53. Spencer's complaints regarding the workplace harassment constitute protected activity under Title VII. In making her complaints, Spencer reasonably believed she was being subjected to unlawful workplace harassment and discrimination on the basis of sex.

54. Pleading in the alternative, the County terminated Spencer's employment because she complained about the workplace harassment and discrimination.

55. The County's retaliation has directly and proximately caused Spencer to incur past and future economic loss, including lost wages, harm to her career, reputation, and earning potential, and severe emotional distress. Spencer seeks recovery of these damages in an amount to be quantified and proven during the discovery process.

## JURY DEMAND

56. Pursuant to Fed. R. Civ. P. 38, Spencer demands a trial by jury on all issues that are triable to a jury.

## REQUEST FOR RELIEF

WHEREFORE, Plaintiff Cassie Spencer requests a judgment and relief against Defendant Kane County as follows:

(1) A judgment awarding Spencer all lost wages (back and future wages), lost employment compensation, and other lost economic benefits lost as a result of Kane County's unlawful acts and omissions;

(2) A judgment awarding Spencer compensatory damages, including damages for emotional distress, loss of enjoyment of life, and other non-pecuniary losses, in amount to be determined by the jury;

(3) A judgment awarding Spencer punitive damages in an amount to be determined by the jury;

(4) A judgment awarding Spencer prejudgment and post-judgment interest, as applicable, at the highest lawful rates;

(5) A judgment awarding Spencer her reasonable attorney's fees and courts costs, including expert witness fees; and

(6) A judgment awarding Spencer such further and additional legal and/or equitable relief as the Court deems appropriate.

Dated this 30th day of August, 2021.

                                      STAVROS LAW P.C.

                                      /s/ Austin B. Egan
                                      Austin B. Egan
                                      *Attorney for Cassie Spencer*